IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RODNEY KNIGHT,

                                               OPINION AND  ORDER

                   Plaintiff,

                                        07-cv-718-bbc

        v.

TRAVIS MYREN, C. TOPF WELLS
KATHLEEN FALK, and DANE COUNTY,

                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Rodney Knight, a lawyer employed by defendant Dane County, brought this action under 42 U.S.C. § 1983, alleging that defendant Dane County and three of its officials, Travis Myren, C. Topf Wells and Kathleen Falk, deprived him of his property interest in a salary raise without due process of law.  The matter is now before the court on cross motions for summary judgment.  Because plaintiff cannot show that he has a property interest in the raise he seeks, and because even if he had such an interest, none of the defendants acted to deprive him of it, I conclude that he has no claim under the due process clause.  The relevant facts are undisputed.

1

FACTS

Defendant Dane County is a Wisconsin municipal corporation.  Defendants Myren, Wells and Falk are the county's deputy director of administration, chief of staff, and county executive, respectively.  Prior to June 3, 2004, plaintiff was employed as deputy corporation counsel for Dane County.  On June 3, 2004, at plaintiff's request, the Dane County Board adopted a resolution that reclassified his job to airport counsel.   Plaintiff personally drafted the resolution, which provided:

> The incumbent Deputy Corp Counsel shall be transferred into the position of Airport Counsel at the same salary he receives in his present position, with future salary increases to be the same as would be received had he remained in his present position, or as determined annually by the Airport Director in consultation with the Airport Commission and approved by the County Board and County Executive in the budget process.

As deputy corporate counsel, plaintiff was paid 105 percent of the salary of the highest-paid worker he supervised.

As deputy corporate counsel, plaintiff was not a member of a collective bargaining unit because he had supervisory, managerial and confidential duties that excluded him from union membership under Wisconsin law.  As airport counsel, however, plaintiff did not supervise other employees, making him eligible for union membership.  In mid-2005, John Talis, president of the bargaining unit Dane County Attorneys Association, formally requested that plaintiff's position be accreted into the bargaining unit.  After consultation

2

with counsel, defendant Myren concluded that the airport counsel position was properly subject to union membership and that challenging the union's demand would have been futile.  In mid-2006 defendant Myren conceded that the airport counsel position should be in the union.

Under the collective bargaining agreement then in effect, union members were paid according to a grid based on seniority which, if applied to plaintiff, would have resulted in a 5% salary reduction.  The highest grid level at the time was step 39, which paid 5 percent less than plaintiff's salary.  Union attorneys expressed resentment at the prospect of plaintiff's making more money than union members of comparable seniority.  To avoid a reduction in salary for plaintiff, defendant Myren entered into a memorandum of understanding with the union, on behalf of Dane County,  whereby plaintiff's salary would not be reduced, but he would have to stay at the same salary level until other union attorneys reached the same pay level.  Plaintiff was provided with drafts of the memorandum of understanding as it was being negotiated.

Shortly after the memorandum was signed, the county and union began negotiating a new collective bargaining agreement with the attorney unit.  The new agreement added step 40 to the grid, allowing plaintiff to retain his existing salary, which was 105% of step 39.  Some other attorneys in the unit are also paid at step 40.  Plaintiff twice asked the union to grieve what he thought was a reduction in pay, but the union refused.

3

OPINION

Plaintiff contends that the June 3, 2004 county board resolution gave him a property interest in receiving a salary that was five percent greater than the top salary of  union attorneys he was supervising at the time.  He argues that when defendants entered into the memorandum of understanding with the union, which temporarily allowed him to be paid more than the union pay scale in the collective bargaining agreement, they deprived him of his right to earn his promised five percent premium over the salary of the attorneys he formerly supervised, and that they did so without affording him due process.  Defendants contend that plaintiff never acquired a property interest in the salary increases; if there were such an interest, defendants did not cause any deprivation to plaintiff; and adequate state remedies were available to him.

To succeed on his claim, plaintiff must establish that defendants deprived him of a constitutionally protected property interest without due process of law.  Zinermon v. Burch, 494 U.S. 113, 125-26 (1990).  The scope of protected property rights is established by state law.  Archie v. City of Racine, 847 F.2d 1211, 1217 (7th Cir. 1988).  Under state law the county was powerless to grant plaintiff rights that conflicted with collective bargaining rights and state statutes.  Therefore, I conclude that the resolution did not convey those rights to plaintiff.  That plaintiff ultimately became subject to the limitations of the collective bargaining agreement was not the result of any action by defendants, but rather the actions

4

of the union under law that was in effect at the time of the resolution.  Absent a showing of

any property interest or deprivation, I need not reach the issue of the adequacy of available

state procedures.


A. <u>Property Interest</u>

In his former position as deputy corporation counsel for Dane County, plaintiff was

entitled to a salary pursuant to Dane County Ordinance § 18.19(4):

> [A]n employee serving in a supervisory or management position
> shall be paid at a rate which is 105% of the pay that the
> employee would earn, with equal longevity credits but excluding
> overtime earned by a bargaining unit employee, if holding a
> position in the highest pay range he or she supervises or
> manages or, in the alternative, the rate as provided in the
> managerial and professional salary schedule, whichever is
> greater.

Under the terms of the June 3, 2004 board resolution, plaintiff was transferred to the

position of airport counsel and was to be paid "the same salary he receives in his present

position, with future salary increases to be the same as would be received had he remained

in his present position."  Although neither the plaintiff nor the defendants considered the

possibility, the responsibilities of the airport counsel position satisfied the requirements for

inclusion in the Dane County Attorneys Association collective bargaining unit and made the

position susceptible to accretion into the bargaining unit.  After the position was accreted,

it became logically impossible to satisfy both the requirements of the collective bargaining agreement's pay grid and the resolution's provision that airport counsel would be paid as a non-union supervisory position.

The question is whether the county board resolution should be construed to override the conflicting limitation on salary inherent in the collective bargaining agreement, as plaintiff contends, or as not conveying a property right to ongoing salary increases, which is the way defendants read it.

Generally, ordinances are interpreted like statutes: the language of the enactment is applied to effectuate the intent of the legislative body. <u>Schroeder v. Dane County Board of Adjustment</u>, 228 Wis. 2d 324, 333, 596 N.W.2d 472 (Ct. App. 1999). If the language is ambiguous, the court considers the scope, history, context, subject matter and object of the ordinance to discern its meaning. <u>Id.</u> However, a board resolution "denotes something less solemn or formal than, or not rising to the dignity of, an ordinance." <u>Wisconsin Employment Relations Commission v. Teamsters Local No. 563</u>, 75 Wis. 2d 602, 613, 250 N.W.2d 696 (1977)(quoting 5 McQuillin, <u>The Law of Municipal Corporations</u>, (3d ed. 1969)). As a result, county board resolutions "will receive a liberal construction in order to effectuate their evident intent." <u>Cross v. Soderbeck</u>, 94 Wis. 2d 331, 341, 288 N.W.2d 779 (1980). Collective bargaining agreements and statutes governing conditions of employment should be harmonized if possible. <u>Glendale Professional Policemen's Association v. City of</u>

6

Glendale, 83 Wis. 2d 90, 106, 264 N.W.2d 594 (1978).

The county board's June 3 ordinance was not intended to give plaintiff the right to pay that is in conflict with the collective bargaining agreement and it did not have that effect.  Plaintiff concedes that, despite the fact that he drafted the resolution and presented it to the board, he did not consider the possibility that the newly created position might be subject to accretion into the bargaining unit.  It does not appear that the board ever considered the issue, but enacted the resolution on the assumption that the airport counsel position was a non-union, supervisory position. Under the circumstances, the board had no reason to include an express provision that the resolution did not overcome previously existing law, yet that was surely implicit in the enactment.  Any other interpretation would neither harmonize the conflicting resolutions adopting the collective bargaining agreement and authorizing the airport counsel position, nor avoid the absurdity that the resolution entitled plaintiff to 105 percent of the highest bargaining unit employee, when he himself is a bargaining unit employee.

If I make the contrary assumption, that the resolution requires payment above the salary of all other bargaining unit employees, the result is the same.  Such a resolution would be void as conflicting with state statutes.  Bleck v. Monona Village, 34 Wis. 2d 191, 200-01, 148 N.W.2d 708 (1967).  Similarly, a contract governing labor terms that violates law or public policy is void.  Teamsters Local No. 563, 75 Wis. 2d at 612.  Negotiation and

7

agreement to pay an individual bargaining unit member a salary other than the salary provided in the collective bargaining agreement would be a violation of the county's duty to negotiate in good faith with the representative of the unit and an unfair labor practice.  <u>See</u> Wis. Stats. §§ 111.70(1)a (establishing duty to bargain in good faith with respect to wages) and 111.70(3)(a)4 (defining separate negotiations with union employees during bargaining as prohibited practice, unless expressly subject to subsequent bargaining agreement). Agreeing to pay a union employee a salary outside the salary range in the collective bargaining agreement would be in direct contradiction of the right and obligation to bargain collectively in good faith and the policy that underlies the law.  The objection and resentment of existing union members to plaintiff's higher salary demonstrate the detrimental effects of such separate negotiations.

As a matter of law, a conflict between the board resolution establishing the airport counsel position and the collective bargaining agreement must be resolved in favor of the bargaining agreement, rendering the June 3, 2004 resolution legally unenforceable to the extent it conflicts.  As a general rule, a collective bargaining agreement supersedes any conflicting ordinance when the ordinance and the collective bargaining agreement involve the same parties.  <u>City of Madison v. Madison Professional Police Officers Association</u>, 144 Wis. 2d 576, 591, 425 N.W.2d 8 (1988)(citing with approval <u>Cayo v. Milwaukee</u>, 41 Wis. 2d 643, 651, 165 N.W.2d 198 (1969)).  By contrast, the conflicting ordinance prevails only

8

if the ordinance "targets a general group, so that it would be against public policy to allow one sub-group, and one sub-group only, to escape operation of law by means of a contract." Madison Professional Police Officers, 144 Wis. 2d at 592.  Here, it is the ordinance that would allow a single member of the group to evade the more generally applicable labor agreement.  In this situation, the exception is certainly inapplicable and re-enforces the appropriateness of the general rule that the collective bargaining agreement prevails.

The county board's June 3, 2004 resolution granted plaintiff certain property interests in his job, including the right to employment and the right to the salary specified, so long as he was not a member of the collective bargaining agreement.  It is undisputed that defendants provided these rights.  However, under applicable state law the resolution did not, and could not provide plaintiff a property right to receive a salary or raises beyond the terms of the collective bargaining agreement once he became a collective bargaining unit member.  Therefore, any disadvantage plaintiff suffered as a result of his accretion into the bargaining unit was not the deprivation of a property interest.

## B. Deprivation by Defendants

Even if, contrary to logic, I were to characterize plaintiff's property interest under the county board resolution as encompassing a right to receive a salary in conflict with the collective bargaining agreement, defendants did not cause a deprivation of that right.  Any

loss plaintiff incurred was the result of third-party enforcement of state law rights under the collective bargaining agreement, not the result of a Dane County policy, <u>Monell v. Department of Social Services of City of New York</u>, 436 U.S. 658, 694 (1978), or the actions of any individual defendant.  <u>Wolfe-Lillie v. Sonquist</u>, 699 F.2d 864, 869 (7th Cir. 1983).  Plaintiff does not dispute that his position was properly accreted into the bargaining unit.  Once accretion occurred, his salary and raises were governed by the agreement.  No action of the county or its agents contributed to the adverse consequences to plaintiff flowing directly from the actions of the unit in enforcing its legal rights.

Plaintiff relies exclusively on the fact that the individual defendants participated in negotiating the memorandum of understanding with the union.  But the memorandum of understanding did not deprive plaintiff of any property interest.  Under applicable law the union was entitled to insist that plaintiff be paid pursuant to the collective bargaining grid.  By virtue of the memorandum of understanding, the union agreed to waive its rights and permit payment to plaintiff above his entitlement under the agreement.  Had defendants done nothing, instead allowing the union to assert its conceded legal rights, plaintiff would have been worse off.  Any reduction in plaintiff's salary or raises is attributable to the assertion of third-party legal rights and not to any conduct or policy of defendants.

10

ORDER

IT IS ORDERED that defendant's motion for summary judgment, dkt. #27, is GRANTED and that plaintiff's motion for summary judgment, dkt. #22, is DENIED.  The clerk of court is directed to enter judgment dismissing plaintiff's complaint with prejudice.


Entered this 4th day of September, 2008.

BY THE COURT:


/s/

_____

BARBARA B. CRABB
District Judge

11